UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21941-CV-COOKE/BROWN

ROBERTO TAZOE, a Florida
resident, as Personal Representative
of the Estate of RICARDO TAZOE,
deceased,

        Plaintiff,

vs.

TAM LINHAS AEREAS, a foreign
corporation; AIRBUS S.A.S., a foreign
corporation; AIRBUS INDUSTRIE G.I.E.,
a foreign corporation; AIRBUS NORTH
AMERICAN CUSTOMER SERVICES, INC.,
a foreign corporation; GOODRICH CORP., a
foreign corporation; INTERNATIONAL
AERO ENGINES AG, a foreign corporation;
and PEGASUS AVIATION IV, INC., a
foreign corporation,

        Defendants.
_____/

### SECOND AMENDED COMPLAINT FOR WRONGFUL DEATH

Plaintiff brings this action against the Defendants and respectfully alleges as follows:

1.    This action seeks damages for a wrongful death arising out of the July 17, 2007,

aircraft accident that occurred when TAM Linhas Aéreas Flight JJ 3054 crashed while attempting

to land at Congonhas Airport in Sao Paulo, Brazil.

### PARTIES

2.    At all times material, Plaintiff, Roberto Tazoe ("Plaintiff"), was and is a citizen and

resident of the State of Florida.  The decedent, Ricardo Tazoe ("decedent"), was a citizen and

resident of the State of Florida.


EXHIBIT
A

CASE NO. 07-21941-CV-COOKE/BROWN

3.    At all times material, Plaintiff has or will be appointed the Personal Representative of the Estate of decedent, deceased, who was killed on July 17, 2007, when TAM Linhas Aéreas Flight JJ 3054 crashed while attempting to land at Congonhas Airport in Sao Paulo.

4.    As the appointed Personal Representative of decedent's estate, Plaintiff brings this action for the decedent's wrongful death in a representative capacity on behalf of all potential survivors and/or beneficiaries, including but not limited to the following:

      a.    Vanessa Tazoe, wife of decedent;

      b.    Alessandra Tazoe, minor daughter of decedent;

      c.    Mark Tazoe, minor son of decedent;

      d.    Violeta Tazoe, mother of decedent;

      e.    Ricardo Tazoe, father of decedent;

      f.    The Estate of Ricardo Tazoe; and

      e.    Any other individual entitled to recover under applicable law.

5.    At all times material, Defendant, TAM Linhas Aéreas ("TAM"), was and is a Brazilian corporation having its principal place of business in Sao Paulo, Brazil, which has in the past and continues to engage in substantial and not isolated business activity on a continuous and systematic basis in the State of Florida, including operating daily flights into and out of Miami International Airport, giving this Court jurisdiction pursuant to § 48.193 of the Florida Statutes.

6.    At all times material, TAM was and is a commercial carrier engaged in the business of carrying fare-paying passengers on regularly scheduled flights, in aircraft owned, leased, operated,

- 2 -

CASE NO. 07-21941-CV-COOKE/BROWN

managed, maintained and/or controlled by TAM and its employees, agents, and/or representatives acting within the course and scope of their employment.

      7.    At all times material, Moreira Talles, 5201 Blue Lagoon Drive, Suite 700, Miami, Florida, 33126, is and was the Registered Agent for TAM and is authorized to accept service of process pursuant to Florida Statute § 48.091.

      8.    At all times material, Defendants, Airbus S.A.S. and Airbus Industrie G.I.E. (collectively, "Airbus"), were and are French corporations having their principal place of business in Toulouse, France, which have in the past and continue to engage in substantial and not isolated business activity on a continuous and systematic basis in the State of Florida, giving this Court jurisdiction pursuant to § 48.193 of the Florida Statutes. Further, Airbus maintains a North American headquarters in Herndon, Virginia and numerous offices throughout the United States, including a training facility and sales center in Miami, Florida.

      9.    At all times material, Defendant, Airbus North America Customer Services, Inc. ("Airbus North America"), was and is a Florida-based corporation registered under the laws of the State of Delaware and having its principal place of business at 4355 NW 36 Street, Miami Springs, Florida 33166, which has in the past and continues to engage in substantial and not isolated business activity on a continuous and systematic basis in the State of Florida, giving this Court jurisdiction pursuant to § 48.193 of the Florida Statutes.

      10.    At all times material, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida, 33324, is and was the Registered Agent for Airbus North America and is authorized to accept service of process pursuant to Florida Statute § 48.091.

CASE NO. 07-21941-CV-COOKE/BROWN

11.     At all times material, Defendant, Goodrich Corporation ("Goodrich"), was and is a New York corporation having its principal place of business at 2730 West Tyvola Road, Charlotte, North Carolina, 28217, which has in the past and continues to engage in substantial and not isolated business activity on a continuous and systematic basis in the State of Florida, giving this Court jurisdiction pursuant to § 48.193 of the Florida Statutes.

12.     At all times material, Corporation Service Company, 1201 Hays Street, Tallahassee, Florida, 32301, is and was the Registered Agent for Goodrich and is authorized to accept service of process pursuant to Florida Statute § 48.091.

13.     At all times material, Defendant, International Aero Engines AG ("IAE"), was and is headquartered in East Hartford, Connecticut and registered in Switzerland. Further, IAE maintains its final assembly facility in Middletown, Connecticut. IAE has in the past and continues to engage in substantial and not isolated business activity on a continuous and systematic basis in the State of Florida, giving this Court jurisdiction pursuant to § 48.193 of the Florida Statutes.

14.     At all times material, Defendant, Pegasus Aviation IV, Inc. ("Pegasus"), was and is a Delaware corporation with its principal place of business in San Francisco, California. Pegasus has in the past and continues to engage in substantial and not isolated business activity on a continuous and systematic basis in the State of Florida, giving this Court jurisdiction pursuant to § 48.193 of the Florida Statutes.

**JURISDICTION AND VENUE**

15.     Jurisdiction is proper in the federal courts of the United States pursuant to 28 U.S.C. §1331(a), in that this is a civil action which arises under the laws and treaties of the United States,

- 4 -

CASE NO. 07-21941-CV-COOKE/BROWN

namely the *Convention for the Unification of Certain Rules Relating to International Transportation by Air*, concluded at Montreal, Canada, on May 28, 1999 (the "Montreal Convention") and/or the *Convention for the Unification of Certain Rules Relating to International Transportation*, concluded at Warsaw, Poland on October 12, 1929, as amended at The Hague, 1955 (the "Warsaw Convention"), 49 Stat. 3000, reprinted in 49 U.S.C. §1502, *et seq.*, and all relevant laws applicable thereunder.

16. Federal jurisdiction is also founded upon multiparty, multiforum jurisdiction, 28 U.S.C. § 1369, because the action involves minimal diversity, arises from a single accident where at least seventy-five (75) people have died, and the accident occurred in a location other than the State where a defendant resides.

17. Venue is proper in this District pursuant to Article 28 of the Warsaw Convention.

18. Pursuant to Article 28 of the Warsaw Convention, jurisdiction is not only proper in this District, but mandated because Miami, Florida is the place where the contract of carriage was entered into by and between the decedent and the carrier (i.e., TAM), and was the decedent's final destination, which, according to the Warsaw Convention and applicable case law, entitles the Personal Representative to maintain this action in this District.

19. Additionally, venue in this District satisfies the requirements of 28 U.S.C. §1391 in that, as set forth above, each of the Defendants is found in this District or subject to personal jurisdiction in this District.

## **GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

20. On July 17, 2007, the decedent was a fare-paying passenger pursuant to a contract for carriage aboard TAM Linhas Aéreas Flight JJ 3054 (the "subject flight"), aboard an Airbus A320

CASE NO. 07-21941-CV-COOKE/BROWN

(registered under the number PR-MBK, Manufacturer Serial Number 0789) (the "subject aircraft"),

on a scheduled commercial flight from Porto Alegre to Sao Paulo, Brazil.

21.     The decedent purchased the ticket for the subject flight in Miami, Florida as part of

a round-trip international ticket departing from Miami, Florida on July 10, 2007 to Rio Di Janeiro,

Brazil and returning to Miami, Florida on July 19, 2007. The round-trip international ticket included

and/or governed a number of flights within Brazil, including the subject flight.

22.     At all times material, TAM owned, leased, operated and/or was the entity in control

of the subject aircraft, a dangerous instrumentality, and was responsible for safely operating and

properly maintaining, servicing, inspecting, repairing and testing the subject aircraft and all

associated component parts thereof.

23.     At all times material, Airbus designed, manufactured, tested, inspected, marketed,

distributed, sold, installed, modified, serviced, maintained, repaired and/or otherwise placed into the

stream of commerce the subject aircraft, including but not limited to the thrust reversers and all

component parts installed on the subject aircraft.

24.     At all times material, Airbus North America provided training materials for pilots,

flight crews and ground personnel employed by TAM, including but not limited to the pilots, flight

crew and ground personnel of the subject flight.

25.     Moreover, Airbus North America provided customer support, simulator training and

other training procedures and/or materials for pilots, flight crews and ground personnel employed

by TAM, including but not limited to the pilots, flight crew and ground personnel of the subject

flight.

- 6 -

CASE NO. 07-21941-CV-COOKE/BROWN

26.    At all times material, Goodrich provided maintenance, repair and/or overhaul services for the TAM fleet of aircraft, including, but not limited to, the aircrafts' thrust reversers. TAM specifically contracted with Goodrich to have Goodrich provide all thrust reverser services for the entire fleet of TAM A320 aircraft.

27.    Moreover, Goodrich designed, manufactured, tested, inspected, marketed, distributed, sold, installed, modified, serviced, maintained, repaired and/or otherwise placed into the stream of commerce the braking and thrust reverser systems, including all component parts, installed on the subject aircraft.

28.    At all times material, IAE designed, manufactured, tested, inspected, marketed, distributed, sold, installed, modified, serviced, maintained, repaired and/or otherwise placed into the stream of commerce the V2527-A5 jet engines (the "subject engines"), including the thrust reverser system and all other component parts, installed on the subject aircraft.

29.    At all material times, Pegasus was the owner, lessor and/or entity in control of the subject aircraft, a dangerous instrumentality, and leased the subject aircraft to TAM.

30.    On July 17, 2007, the subject flight crashed while attempting to land at Congonhas Airport in Sao Paulo, Brazil when it failed to break and/or decelerate, overran the runway, and crashed into a building. All one hundred and eighty-six (186) passengers on board the subject aircraft were killed, as well as a number of people on the ground.

31.    As a result of the foregoing, the decedent was forced to endure severe mental anguish, fear of impending death, severe physical injuries and death.

CASE NO. 07-21941-CV-COOKE/BROWN

32.     As a direct and proximate result of the crash, the Defendants' negligence and other misconduct as hereinafter alleged, Defendants are liable to Plaintiff for all damages to which the Estate of the decedent, the survivors and/or beneficiaries are entitled as applicable law may provide.

**COUNT I**
**NEGLIGENCE AND VICARIOUS LIABILITY**
**AGAINST TAM LINHAS AEREAS**

33.     At all times material, TAM owned, leased, managed, maintained, operated and/or was the entity in control of the subject aircraft involved in the subject accident.

34.     At all times material, TAM owed a duty to the passengers aboard the subject flight, including the decedent, to operate and control the subject aircraft, on the ground and in the air, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind.

35.     As the owner, lessee, operator and/or entity in control of the subject aircraft, a dangerous instrumentality, TAM was responsible for ensuring that the subject aircraft was operated only by properly trained, competent and capable pilots and ensuring that the subject aircraft was properly maintained.

36.     The air crash which occurred on July 17, 2007, and which resulted in the death of the decedent, was a direct and proximate result of the negligence and other misconduct hereinafter alleged of TAM.

37.     TAM knew or should have known that if the subject aircraft was not operated by properly trained and competent pilots and/or properly maintained, there would be an unreasonable risk of harm to persons operating, flying, and/or being flown aboard the subject aircraft.

38.     At all times material, TAM, by and through its agents, employees and/or representatives, breached its duty of care in many ways, including, but not limited to:

- 8 -

CASE NO. 07-21941-CV-COOKE/BROWN

a.     Failing to exercise due care in the hiring and selection of employees, agents and/or representatives to ensure that all safety precautions and/or preflight procedures were followed by those who operated and/or serviced TAM aircraft in general and the subject aircraft and subject flight in particular;

b.     Failing to ensure that the operators and flight crew of the subject aircraft used standard, reasonably prudent and acceptable piloting techniques and skills in the operation of the subject flight, in violation of state common law, industry and/or reasonable standards;

c.     Failing to properly train, supervise, and/or monitor flight crews, including its pilots;

d.     Failing to properly maintain the subject aircraft in a safe condition;

e.     Failing to properly navigate and/or operate the subject aircraft in a safe and competent manner given the prevailing weather, visibility, and runway conditions;

f.     Failing to properly navigate and/or operate the subject aircraft in a safe and competent manner by knowingly allowing the aircraft to fly with an inoperative thrust reverser;

g.     Failing to warn passengers on the subject flight of the danger due to TAM's failure to provide a flight crew capable, trained, and able to properly and safely operate the subject aircraft;

h.     Failing to warn passengers on the subject flight of the danger due to TAM's failure to provide an aircraft with safe and operational thrust reversers; and/or

i.     Failing to follow proper and safe landing procedures.

39.    At all times material, TAM failed to exercise the required degree of care in transporting the decedent, and securing the safety of the subject flight, and maintained and operated

CASE NO. 07-21941-CV-COOKE/BROWN

the subject flight on the ground and in the air in a hazardous manner which negligently violated operative safety, maintenance and transportation regulations and procedures and/or the applicable standards of care, with the knowledge that such violations could and/or would likely cause injury, and with disregard for the consequences of its negligence.

40.    Specifically, but not by way of limitation, prior to and on July 17, 2007, TAM had actual and constructive knowledge that the operation of the subject flight was subject to these known dangers, including that of an inoperative thrust reverser, lack of crew experience and other hazards, thus placing the flight's passengers at a risk of physical harm.

41.    Notwithstanding this knowledge, TAM and its employees, agents and/or representatives, acting within the course and scope of their employment, failed or refused to warn the passengers of the subject flight of the known dangers and/or failed or refused to protect those passengers from the known risks and/or failed or refused to take the precautionary measures necessary to prevent injury.

42.    The crash of the subject flight on July 17, 2007, was proximately and/or legally caused by TAM, by and through the negligent acts of its agents, employees, and/or representatives. Furthermore, as the operator of a dangerous instrumentality entrusted to its agents, employees, and/or representatives, TAM is legally, vicariously and/or otherwise liable for the negligent acts of its employees, agents and/or representatives.

43.    As a direct and proximate cause of TAM's negligence, the decedent suffered severe injuries and death when the subject aircraft crashed on July 17, 2007, while attempting to land at Congonhas airport.

CASE NO. 07-21941-CV-COOKE/BROWN

44.     As a direct and proximate result of TAM's negligence and the consequent death of the decedent, Plaintiff has been damaged and claims all damages to which he and the Estate, survivors and/or beneficiaries are entitled, including, as applicable law may provide, but not limited to:

     a.    pain and suffering of decedent prior to death;

     b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

     c.    lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

     d.    pecuniary losses including loss of support in money or in kind;

     e.    loss of inheritance and/or net accumulations;

     f.    lost value of life;

     g.    funeral expenses; and/or

     h.    any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law.

WHEREFORE, Plaintiff sues TAM for compensatory damages, costs and such other relief as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable as of right by a jury.

CASE NO. 07-21941-CV-COOKE/BROWN

## COUNT II
## AGAINST TAM FOR DAMAGES
## UNDER THE MONTREAL CONVENTION

45.    At the time of the crash of the subject flight on July 17, 2007, there was in force and effect in the United States a certain multilateral treaty relating to the rules governing international carriage by air known as the *Convention for the Unification of Certain Rules Relating to International Transportation by Air*, concluded at Montreal, Canada, on May 28, 1999 (the "Montreal Convention").

46.    At the time of his injury and death, the decedent was engaged in international carriage as defined in Article 1(2) of the Montreal Convention and the same is, therefore, applicable to this action pursuant to Article 1(1) of the Montreal Convention.

47.    Pursuant to Article 17 of the Montreal Convention, the carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

48.    On July 17, 2007, TAM was the carrier of the decedent while he was on board the subject flight.

49.    As a result of the crash of the subject flight on July 17, 2007, the decedent suffered bodily injury and death while on board the aircraft.

50.    As a direct and proximate result of TAM's negligence and the consequent death of the decedent and pursuant to the Montreal Convention, Plaintiff has been damaged and claims all damages to which he and the Estate, survivors and/or beneficiaries are entitled, including, as applicable law may provide, but not limited to:

- 12 -

CASE NO. 07-21941-CV-COOKE/BROWN

a.  pain and suffering of decedent prior to death;

b.  pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

c.  lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

d.  pecuniary losses including loss of support in money or in kind;

e.  loss of inheritance and/or net accumulations;

f.  lost value of life;

g.  funeral expenses; and/or

h.  any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law.

WHEREFORE, Plaintiff sues TAM for compensatory damages, costs and such other relief as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable as of right by a jury.

## COUNT III
## AGAINST TAM FOR DAMAGES
## UNDER THE WARSAW CONVENTION

51.  At the time of the crash of the subject flight on July 17, 2007, there was in force and effect in the United States a certain multilateral treaty relating to the rules governing international carriage by air known as the *Convention for the Unification of Certain Rules Relating to International Transportation*, concluded at Warsaw, Poland on October 12, 1929, as amended at The Hauge, 1955 (the "Warsaw Convention").

- 13 -

CASE NO. 07-21941-CV-COOKE/BROWN

52.    At the time of his injury and death, the decedent was engaged in international carriage as defined in Article 1(2) of the Warsaw Convention and the same is, therefore, applicable to this action pursuant to Article 1(1) of the Warsaw Convention.

53.    Pursuant to Article 17 of the Warsaw Convention, the carrier is liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger if the accident which caused the damage sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

54.    On July 17, 2007, TAM was the carrier of the decedent while he was on board the subject flight.

55.    As a result of the crash of the subject flight on July 17, 2007 and TAM's willful misconduct, the decedent suffered bodily injury and death while on board the aircraft.

56.    As a direct and proximate result of TAM's negligence and the consequent death of the decedent, Plaintiff has been damaged and claims all damages to which he and the Estate, survivors and/or beneficiaries are entitled, including, as applicable law may provide, but not limited to:

a.    pain and suffering of decedent prior to death;

b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

c.    lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

d.    pecuniary losses including loss of support in money or in kind;

- 14 -

CASE NO. 07-21941-CV-COOKE/BROWN

    e.    loss of inheritance and/or net accumulations;

    f.    lost value of life;

    g.    funeral expenses; and/or

    h.    any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law.

WHEREFORE, Plaintiff sues TAM for compensatory damages, costs and such other relief as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable as of right by a jury.

## COUNT IV
## NEGLIGENCE AGAINST AIRBUS

57.    At all times material, Airbus had a duty to use the highest degree of care in designing, manufacturing, modifying, testing, packaging, marketing, selling, installing, supporting, servicing, repairing and/or maintaining the subject aircraft, including but not limited to the thrust reversers and all component parts installed on the subject aircraft.

58.    Airbus breached the duty of care owed to Plaintiff and/or the decedent by committing one or more of the following acts and/or omissions:

    a.    Negligently designing, manufacturing, testing, inspecting, marketing, selling, installing, supporting, modifying, servicing and/or maintaining the subject aircraft and/or the thrust reversers installed on the subject aircraft;

    b.    Failing to warn or remedy the defects associated with the subject aircraft and/or the thrust reversers installed on the subject aircraft and by advising operators of its aircraft that the aircraft may be safely operated with one inoperative thrust reverser; and/or

CASE NO. 07-21941-CV-COOKE/BROWN

c.    Failing to provide adequate training and instructions for the safe and proper use and/or maintenance of the subject aircraft and/or the thrust reversers installed on the subject aircraft, including but not limited to the provision of inadequate and confusing instructions to operators regarding the proper way to operate the aircraft with an inoperative thrust reverser.

59.    If Airbus had properly designed, manufactured, modified, repaired, maintained, supported, inspected and/or tested the subject aircraft and/or the thrust reversers and all component parts installed on the subject aircraft, and/or provided adequate training, warnings or information regarding the design defects of the subject aircraft and/or the thrust reversers installed on the subject aircraft, the subject aircraft and/or the thrust reversers would have been operational and the subject accident would have been avoided.

60.    Further, Airbus had specific and detailed knowledge of the enhanced dangers of flying with an inoperative thrust reverser and the likelihood that flying with an inoperative thrust reverser would result in an air crash, such as the subject accident. Specifically, Airbus had knowledge of the following similar incidents:

a.    July 9, 2006, Siberia Airlines (presently known as S7 Airlines), Flight 778, also involving an Airbus A310. The aircraft departed Moscow for Irkutsk with an inoperative thrust reverser and crashed upon landing at Irkutsk International Airport. One hundred twenty four (124) people died and seventy-nine (79) were injured as a result of the crash;

b.    October 18, 2004, TransAsia Airways, Flight 536, also involving an Airbus A320. The aircraft departed Tainan Airport for Taipei Sungshan Airport with an inoperative thrust reverser and overran the runway upon landing;

c.    August 28, 2002, America West Airlines, Flight 794, also involving an Airbus A320. The aircraft departed Houston,

- 16 -

CASE NO. 07-21941-CV-COOKE/BROWN

Texas for Phoenix, Arizona with an inoperative thrust reverser and experienced a runway excursion upon landing;

d.     March 22, 1998, Philippine Air Lines, Flight 137, also involving an Airbus A320. The aircraft departed Manila for Bacolod with an inoperative thrust reverser and experienced a runway excursion and overrun upon landing.

61.     Despite having unequivocal evidence of the dangers of flying with an inoperative thrust reverser, Airbus allowed and instructed carriers that it was safe to operate its 300 series aircraft when not all thrust reversers were operational.

62.     As a direct and proximate result of the above-described negligent acts and omissions of Airbus which caused the subject crash and the consequent death of the decedent, Plaintiff has been damaged and claims all damages to which the Estate, the survivors and/or beneficiaries may be entitled, including as applicable law may provide, but not limited to:

a.     pain and suffering of decedent prior to death;

b.     pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

c.     lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

d.     pecuniary losses including loss of support in money or in kind;

e.     loss of inheritance and/or net accumulations;

f.     lost value of life;

g.     funeral expenses; and/or

CASE NO. 07-21941-CV-COOKE/BROWN

h.    any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law.

WHEREFORE, Plaintiff sues Airbus for compensatory damages, costs and such other relief as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable as of right by a jury.

## COUNT V
## STRICT PRODUCTS LIABILITY AGAINST AIRBUS

63.    Airbus designed, manufactured, modified, tested, inspected, marketed, packaged, sold, installed, serviced, supported, repaired and/or maintained the subject aircraft and/or the thrust reversers and all component parts installed on the subject aircraft, and prepared, revised, and/or updated all notices, information, manuals, instructions, warnings and/or procedures regarding the operation, maintenance, and limitations of the subject aircraft and/or the thrust reversers installed on the subject aircraft.

64.    The subject aircraft and/or the thrust reversers and all component parts installed on the subject aircraft were being used on July 17, 2007, in substantially the same condition as it was when sold and/or delivered to its intended user.

65.    On and prior to July 17, 2007, the subject aircraft and its component parts, including but not limited to, the thrust reversers installed on the subject aircraft, manuals, instructions, and warnings, were defective, unreasonably dangerous, unsafe and unfit for their intended use, and incompatible with reasonable expectations for the performance of said product, and said defects could and did cause the crash which occurred on July 17, 2007.

- 18 -

CASE NO. 07-21941-CV-COOKE/BROWN

66.     As a direct and proximate result of the defective design and/or manufacture of the subject aircraft and/or the thrust reversers installed on the subject aircraft, including but not limited to Airbus's failure to warn, inform, train, instruct, and/or establish proper procedures regarding the operation, maintenance, and limitations of the subject aircraft and/or the thrust reversers installed on the subject aircraft, the subject aircraft crashed on July 17, 2007, resulting in the death of the decedent.

67.     As a further direct and proximate result of Airbus's failure to warn of the defective and unreasonably dangerous condition of the subject aircraft and/or the thrust reversers installed on the subject aircraft and the consequent death of the decedent, Plaintiff has been damaged and claims all damages to which the Estate, the survivors and/or beneficiaries may be entitled, including as applicable law may provide, but not limited to:

    a.    pain and suffering of decedent prior to death;

    b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

    c.    lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

    d.    pecuniary losses including loss of support in money or in kind;

    e.    loss of inheritance and/or net accumulations;

    f.    lost value of life;

    g.    funeral expenses; and/or

h.    any and all other damages to which the decedent, the Plaintiff,
the Estate, the survivors, beneficiaries and/or heirs of the
decedent may be entitled under applicable law.

WHEREFORE, Plaintiff sues Airbus for compensatory damages, costs and such other relief

as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable

as of right by a jury.

**COUNT VI**
**NEGLIGENCE AGAINST AIRBUS NORTH AMERICA**

68.    At all times material, Airbus North America provided training materials for pilots and

flight crews employed by TAM, including but not limited to the flight crew of the subject flight.

69.    Moreover, Airbus North America provided customer support, simulator training and

other training procedures and/or materials for pilots and flight crews employed by TAM, including

but not limited to the flight crew of the subject flight.

70.    As a provider of customer support, simulator services, and/or other training

procedures and materials, Airbus North America had a duty to provide current and accurate aircraft

and/or aircraft systems information, training, and/or a simulator that accurately and faithfully

replicates the performance characteristics of the subject aircraft in all normal and abnormal

environments and/or procedures.

71.    Airbus North America knew or should have known, or in the exercise of reasonable

care would have known, that breaching the duty stated above by failing to provide current and

accurate aircraft and/or aircraft systems information, training, and/or failing to provide a simulator

that accurately and faithfully replicates the performance characteristics of the subject aircraft in all

normal and abnormal environments and/or procedures could result in TAM, and its employees,

CASE NO. 07-21941-CV-COOKE/BROWN

agents and/or representatives, being insufficiently prepared to safely maneuver the subject aircraft

in certain conditions.

72.    Airbus North America breached the duty of care owed to Plaintiff and/or the decedent

by committing one or more of the following acts and/or omissions:

       a.     Failing to provide adequate training, manuals, warnings and instructions for the safe and proper use and/or maintenance of the subject aircraft and/or the thrust reversers installed on the subject aircraft, including but not limited to the provision of inadequate and confusing instructions to operators regarding the proper way to operate the aircraft with an inoperative thrust reverser;

       b.     Failing to warn of the enhanced dangers of flying the subject aircraft with an inoperative thrust reverser;

       c.     Failing to provide a simulator that accurately and faithfully replicates the performance characteristics of the subject aircraft in all normal and abnormal environments , including but not limited to operation with an inoperative thrust reverser; and/or

       d.     Failing to adequately explain and demonstrate the proper operation of the subject aircraft in landing on a short or otherwise contaminated and/or inadequate runway.

73.    If Airbus North America had provided current and accurate aircraft and/or aircraft

systems information, training, and/or provided a simulator that accurately and faithfully replicated

the performance characteristics of the subject aircraft in all normal and abnormal environments, the

subject accident would have been avoided.

74.    As a direct and proximate result of the above-described negligent acts and omissions

of Airbus North America which caused the subject crash and the consequent death of the decedent,

CASE NO. 07-21941-CV-COOKE/BROWN

Plaintiff has been damaged and claims all damages to which the Estate, the survivors and/or

beneficiaries may be entitled, including as applicable law may provide, but not limited to:

  a.  pain and suffering of decedent prior to death;

  b.  pain and suffering of Plaintiff, survivors, beneficiaries and/or
     heirs of decedent, including but not limited to, the mental
     anguish suffered by said individuals as a result of the death of
     the decedent;

  c.  lost society, consortium, companionship, comfort, instruction,
     guidance, counsel, training and services of the decedent to
     Plaintiff, survivors, beneficiaries and/or heirs;

  d.  pecuniary losses including loss of support in money or in
     kind;

  e.  loss of inheritance and/or net accumulations;

  f.  lost value of life;

  g.  funeral expenses; and/or

  h.  any and all other damages to which the decedent, the Plaintiff,
     the Estate, the survivors, beneficiaries and/or heirs of the
     decedent may be entitled under applicable law.

  WHEREFORE, Plaintiff sues Airbus North America for compensatory damages, costs and

such other relief as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of

all issues triable as of right by a jury.

## COUNT VII
## NEGLIGENCE AGAINST GOODRICH

  75.  At all times material, Goodrich had a duty to use the highest degree of care in  in

designing, manufacturing, modifying, testing, packaging, marketing, selling, installing, supporting,

CASE NO. 07-21941-CV-COOKE/BROWN

servicing, repairing and/or maintaining the braking and thrust reverser systems, including all component parts, installed on the subject aircraft.

76.    Goodrich breached the duty of care owed to Plaintiff and/or the decedent by, among other things, committing one or more of the following acts and/or omissions:

a.    Failing to design, assemble, install, service, repair, maintain and/or manufacture the braking and thrust reverser systems, including all component parts, installed on the subject aircraft so that the subject aircraft could be safely operated;

b.    Failing to test and/or inspect the braking and thrust reverser systems, including all component parts, installed on the subject aircraft for dangerous conditions that existed and/or were likely to exist in the subject aircraft; and/or

c.    Failing to modify, service and/or repair dangerous conditions that were known or likely to be known by Goodrich in the exercise of reasonable care; and/or

d.    Failing to warn, pilots and passengers, including the decedent, of such dangerous conditions concerning and/or relating to Goodrich's design, assembly, installation, repair, servicing, manufacture, testing and/or inspection of the braking and thrust reverser systems, including all component parts, installed on the subject aircraft that were known and/or should have been known to Goodrich.

77.    At all times material, Goodrich knew or in the exercise of reasonable care, should have known that if the braking and thrust reverser systems, including all component parts, installed on the subject aircraft failed, there would be an unreasonable risk of harm to persons piloting and riding as passengers in the subject aircraft.

78.    Goodrich knew or should have known, that if Goodrich's design, assembly, installation, servicing, repair, manufacture, testing and/or inspection of the braking and thrust reverser systems, including all component parts, installed on the subject aircraft was not properly

- 23 -

CASE NO. 07-21941-CV-COOKE/BROWN

executed there would be an unreasonable risk of harm to persons operating, flying, and/or being flown aboard the subject aircraft.

79.     If Goodrich had properly designed, manufactured, modified, repaired, maintained, supported, serviced, assembled, installed, inspected and/or tested the braking and thrust reverser systems, including all component parts, installed on the subject aircraft, and/or provided adequate training, warnings or information regarding the defects of the braking and thrust reverser systems, including all component parts, installed on the subject aircraft, the braking and thrust reverser systems would have been operational and the subject accident would have been avoided.

80.     As a direct and proximate result of the above-described negligent acts and omissions of Goodrich, which caused the subject crash and the consequent death of the decedent, Plaintiff has been damaged and claims all damages to which the Estate, the survivors and/or beneficiaries may be entitled, including as applicable law may provide, but not limited to:

      a.      pain and suffering of decedent prior to death;

      b.      pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

      c.      lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

      d.      pecuniary losses including loss of support in money or in kind;

      e.      loss of inheritance and/or net accumulations;

      f.      lost value of life;

      g.      funeral expenses; and/or

- 24 -

CASE NO. 07-21941-CV-COOKE/BROWN

h.     any and all other damages to which the decedent, the Plaintiff,
the Estate, the survivors, beneficiaries and/or heirs of the
decedent may be entitled under applicable law.

WHEREFORE, Plaintiff sues Goodrich for compensatory damages, costs and such other

relief as this Court deems appropriate.  Furthermore, Plaintiff demands a trial by jury of all issues

triable as of right by a jury.

**COUNT VIII**
**STRICT PRODUCTS LIABILITY AGAINST GOODRICH**

81.     Goodrich designed, manufactured, modified, tested, inspected, marketed, packaged,

sold, installed, serviced, supported, repaired and/or maintained the braking and thrust reverser

systems, including all component parts, installed on the subject aircraft, and prepared, revised, and/or

updated all notices, information, manuals, instructions, warnings and/or procedures regarding the

operation, maintenance, and limitations of the braking and thrust reverser systems, including all

component parts, installed on the subject aircraft.

82.     The braking and thrust reverser systems, including all component parts, installed on

the subject aircraft were being used on July 17, 2007, in substantially the same condition as it was

when sold and/or delivered to its intended user.

83.     On and prior to July 17, 2007, the braking and thrust reverser systems, including all

component parts, installed on the subject aircraft, manuals, instructions, and warnings, were

defective, unreasonably dangerous, unsafe and unfit for their intended use, and incompatible with

reasonable expectations for the performance of said product, and said defects could and did cause

the crash which occurred on July 17, 2007.

CASE NO. 07-21941-CV-COOKE/BROWN

84.     As a direct and proximate result of the defective design and/or manufacture of the braking and thrust reverser systems, including all component parts, installed on the subject aircraft, including but not limited to Goodrich's failure to warn, inform, train, instruct, and/or establish proper procedures regarding the operation, maintenance, and limitations of the braking and thrust reverser systems, including all component parts, installed on the subject aircraft, the subject aircraft crashed on July 17, 2007, resulting in the death of the decedent.

85.     As a further direct and proximate result of Goodrich's failure to warn of the defective and unreasonably dangerous condition of the braking and thrust reverser systems, including all component parts, installed on the subject aircraft, and the consequent death of the decedent, Plaintiff has been damaged and claims all damages to which the Estate, the survivors and/or beneficiaries may be entitled, including as applicable law may provide, but not limited to:

> a.     pain and suffering of decedent prior to death;
>
> b.     pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;
>
> c.     lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;
>
> d.     pecuniary losses including loss of support in money or in kind;
>
> e.     loss of inheritance and/or net accumulations;
>
> f.     lost value of life;
>
> g.     funeral expenses; and/or

CASE NO. 07-21941-CV-COOKE/BROWN

h.    any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law.

WHEREFORE, Plaintiff sues Goodrich for compensatory damages, costs and such other relief as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable as of right by a jury.

## COUNT IX
## NEGLIGENCE AGAINST INTERNATIONAL AERO ENGINES

86.    At all times material, IAE had a duty to use the highest degree of care in designing, manufacturing, modifying, testing, packaging, marketing, selling, installing, supporting, servicing, repairing and/or maintaining the subject engines, including the sub-component thrust reverser system (manufactured by Goodrich) and all other component parts of the engines, installed on the subject aircraft.

87.    IAE breached the duty of care owed to Plaintiff and/or the decedent by committing one or more of the following acts and/or omissions:

a.    Failing to design, assemble, install, service, repair, maintain and/or manufacture the subject engines, including the thrust reverser system and all other component parts, installed on the subject aircraft so that the subject aircraft could be safely operated;

b.    Failing to test and/or inspect the subject engines, including the thrust reverser system and all other component parts, installed on the subject aircraft for dangerous conditions that existed and/or were likely to exist in the subject aircraft;

c.    Failing to modify, service and/or repair dangerous conditions that were known or likely to be known by IAE in the exercise of reasonable care;

- 27 -

CASE NO. 07-21941-CV-COOKE/BROWN

      d.    Failing to warn, pilots and passengers, including the decedent, of such dangerous conditions concerning and/or relating to IAE's design, assembly, installation, repair, servicing, manufacture, testing and/or inspection of the subject engines, including the thrust reverser system and all other component parts, installed on the subject aircraft that were known and/or should have been known to IAE.

88.    At all times material, IAE knew or in the exercise of reasonable care, should have known that if the subject engines, including the thrust reverser system and all other component parts, installed on the subject aircraft failed, there would be an unreasonable risk of harm to persons piloting and riding as passengers in the subject aircraft.

89.    IAE knew or should have known, that if IAE's design, assembly, installation, servicing, repair, manufacture, testing and/or inspection of the subject engines, including the thrust reverser system and all other component parts, installed on the subject aircraft was not properly executed there would be an unreasonable risk of harm to persons operating, flying, and/or being flown aboard the subject aircraft.

90.    If IAE had properly designed, manufactured, modified, repaired, maintained, supported, serviced, assembled, installed, inspected and/or tested the subject engines, including the thrust reverser system and all other component parts, installed on the subject aircraft, and/or provided adequate training, warnings or information regarding the defects of the subject engines, including the thrust reverser system and all other component parts, installed on the subject aircraft, the subject engines and the thrust reverser system would have been operational and the subject accident would have been avoided.

91.    As a direct and proximate result of the above-described negligent acts and omissions of IAE, which caused the subject crash and the consequent death of the decedent, Plaintiff has been

- 28 -

CASE NO. 07-21941-CV-COOKE/BROWN

damaged and claims all damages to which the Estate, the survivors and/or beneficiaries may be entitled, including as applicable law may provide, but not limited to:

    a.    pain and suffering of decedent prior to death;

    b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

    c.    lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

    d.    pecuniary losses including loss of support in money or in kind;

    e.    loss of inheritance and/or net accumulations;

    f.    lost value of life;

    g.    funeral expenses; and/or

    h.    any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law.

WHEREFORE, Plaintiff sues IAE for compensatory damages, costs and such other relief as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable as of right by a jury.

## COUNT X
## STRICT PRODUCTS LIABILITY
## AGAINST INTERNATIONAL AERO ENGINES

92.    IAE designed, manufactured, modified, tested, inspected, marketed, packaged, sold, installed, serviced, supported, repaired and/or maintained the subject engines, including the thrust reverser system and all other component parts of the engines installed on the subject aircraft, and

CASE NO. 07-21941-CV-COOKE/BROWN

prepared, revised, and/or updated all notices, information, manuals, instructions, warnings and/or procedures regarding the operation, maintenance, and limitations of the subject engines, including the thrust reverser system and all other component parts of the engines installed on the subject aircraft.

93.     The subject engines, including the thrust reverser system and all other component parts of the engines installed on the subject aircraft were being used on July 17, 2007, in substantially the same condition as it was when sold and/or delivered to its intended user.

94.     On and prior to July 17, 2007, the subject engines, including the thrust reverser system and all other component parts of the engines installed on the subject aircraft, manuals, instructions, and warnings, were defective, unreasonably dangerous, unsafe and unfit for their intended use, and incompatible with reasonable expectations for the performance of said product, and said defects could and did cause the crash which occurred on July 17, 2007.

95.     As a direct and proximate result of the defective design and/or manufacture of the subject engines, including the thrust reverser system and all other component parts of the engines installed on the subject aircraft, including but not limited to IAE's failure to warn, inform, train, instruct, and/or establish proper procedures regarding the operation, maintenance, and limitations of the subject engines, including the thrust reverser system and all other component parts of the engines installed on the subject aircraft, the subject aircraft crashed on July 17, 2007, resulting in the death of the decedent.

96.     As a further direct and proximate result of IAE's failure to warn of the defective and unreasonably dangerous condition of the subject engines, including the thrust reverser system and all other component parts of the engines installed on the subject aircraft, and the consequent death

CASE NO. 07-21941-CV-COOKE/BROWN

of the decedent, Plaintiff has been damaged and claims all damages to which the Estate, the survivors

and/or beneficiaries may be entitled, including as applicable law may provide, but not limited to:

     a.     pain and suffering of decedent prior to death;

     b.     pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

     c.     lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

     d.     pecuniary losses including loss of support in money or in kind;

     e.     loss of inheritance and/or net accumulations;

     f.     lost value of life;

     g.     funeral expenses; and/or

     h.     any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law.

     WHEREFORE, Plaintiff sues IAE for compensatory damages, costs and such other relief as

this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable as

of right by a jury.

**COUNT XI**
**NEGLIGENCE AGAINST PEGASUS**

     97.     At all times material, Pegasus owned, leased, managed, maintained, operated and/or

was the entity in control of the subject aircraft involved in the subject accident.

CASE NO. 07-21941-CV-COOKE/BROWN

98.    As an aircraft lessor, Pegasus had a duty to exercise reasonable care in procuring and leasing the subject accident, and to provide adequate instructions, warnings and advice to the operator of the subject aircraft, including but not limited to TAM and TAM's employees, agents and/or representatives, so as to avoid injury to passengers riding aboard the subject aircraft.

99.    As an aircraft lessor, Pegasus had a duty to insure that the subject aircraft leased to TAM was properly designed, manufactured and tested.

100.    As an aircraft lessor, Pegasus further had a duty to warn operators and end-users of the subject aircraft, including but not limited to TAM and TAM's employees, agents and/or representatives, of any known latent or patent design defects, flaws, or anomalies in the subject aircraft leased by Pegasus by supplying additional information and warnings in the form of Service Bulletins and/or updated manuals, instructions and/or warnings, and any additional training necessary to insure these updated manuals, instructions and/or warnings were communicated promptly, reliably and accurately.

101.    Pegasus breached the duty of care owed to Plaintiff and/or the decedent by committing one or more of the following acts and/or omissions:

      a.    Failing to insure that the subject aircraft leased to TAM was properly designed, manufactured and tested;

      b.    Failing to provide adequate instructions, warnings and advice to the operator of the subject aircraft so as to avoid injury to passengers riding aboard the subject aircraft, including but not limited to Plaintiff's decedent;

      c.    Failing to warn operators and end-users of the subject aircraft, including but not limited to TAM and TAM's employees, agents and/or representatives, of any known latent or patent design defects, flaws, or anomalies in the subject aircraft leased by Pegasus by supplying additional information and

CASE NO. 07-21941-CV-COOKE/BROWN

warnings in the form of Service Bulletins and/or updated manuals, instructions and/or warnings; and/or

d.    Failing to provide any additional training necessary to insure that any and all updated manuals, instructions and/or warnings were communicated promptly, reliably and accurately to all operators and end-users of the subject aircraft, including but not limited to TAM and TAM's employees, agents and/or representatives.

102.    As a direct and proximate result of the above-described negligent acts and omissions of Goodrich, which caused the subject crash and the consequent death of the decedent, Plaintiff has been damaged and claims all damages to which he and the Estate, survivors and/or beneficiaries are entitled, including, as applicable law may provide, but not limited to:

a.    pain and suffering of decedent prior to death;

b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

c.    lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

d.    pecuniary losses including loss of support in money or in kind;

e.    loss of inheritance and/or net accumulations;

f.    lost value of life;

g.    funeral expenses; and/or

h.    any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law.

CASE NO. 07-21941-CV-COOKE/BROWN

WHEREFORE, Plaintiff sues Pegasus for compensatory damages, costs and such other relief as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable as of right by a jury.

## COUNT XII
## STRICT PRODUCTS LIABILITY AGAINST PEGASUS

103. At all times material, Pegasus owned, leased, managed, maintained, operated and/or was the entity in control of the subject aircraft involved in the subject accident and leased the subject aircraft to TAM.

104. The subject aircraft and/or the thrust reversers and all component parts installed on the subject aircraft were being used on July 17, 2007, in substantially the same condition as it was when sold and/or delivered to its intended user.

105. On and prior to July 17, 2007, the subject aircraft and its component parts, including but not limited to, the thrust reversers installed on the subject aircraft, manuals, instructions, and warnings, were defective, unreasonably dangerous, unsafe and unfit for their intended use, and incompatible with reasonable expectations for the performance of said product, and said defects could and did cause the crash which occurred on July 17, 2007.

106. As a direct and proximate result of the defective design and/or manufacture of the subject aircraft and its component parts, including but not limited to the thrust reversers installed on the subject aircraft, and Pegasus's failure to warn, inform, train, instruct, and/or establish proper procedures regarding the operation, maintenance, and limitations of the subject aircraft and/or the thrust reversers installed on the subject aircraft, the subject aircraft crashed on July 17, 2007, resulting in the death of the decedent.

107.    As a further direct and proximate result of Pegasus's failure to warn of the defective and unreasonably dangerous condition of the subject engines, including the thrust reverser system and all other component parts of the engines installed on the subject aircraft, and the consequent death of the decedent, Plaintiff has been damaged and claims all damages to which the Estate, the survivors and/or beneficiaries may be entitled, including as applicable law may provide, but not limited to:

    a.    pain and suffering of decedent prior to death;

    b.    pain and suffering of Plaintiff, survivors, beneficiaries and/or heirs of decedent, including but not limited to, the mental anguish suffered by said individuals as a result of the death of the decedent;

    c.    lost society, consortium, companionship, comfort, instruction, guidance, counsel, training and services of the decedent to Plaintiff, survivors, beneficiaries and/or heirs;

    d.    pecuniary losses including loss of support in money or in kind;

    e.    loss of inheritance and/or net accumulations;

    f.    lost value of life;

    g.    funeral expenses; and/or

    h.    any and all other damages to which the decedent, the Plaintiff, the Estate, the survivors, beneficiaries and/or heirs of the decedent may be entitled under applicable law.

WHEREFORE, Plaintiff sues Pegasus for compensatory damages, costs and such other relief as this Court deems appropriate. Furthermore, Plaintiff demands a trial by jury of all issues triable as of right by a jury.

DATED this 22nd day of July, 2008.

CASE NO. 07-21941-CV-COOKE/BROWN

Respectfully submitted,

PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
(305) 358-2800 / Fax (305) 358-2382
Email: rmcid@podhurst.com

By:   /s/ Ricardo M. Martínez-Cid
        STEVEN C. MARKS
        Fla. Bar No. 516414
        RICARDO M. MARTINEZ-CID
        Fla. Bar No. 383988