IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-21941-CIV-COOKE/MCALILEY

ROBERTO TAZOE, as Personal Representative of
the Estate of RICARDO TAZOE, deceased, *et al*.

                Plaintiff,

v.

TAM LINHAS AÉREAS, *et al*.,

                Defendants.

**REPLY IN SUPPORT OF DEFENDANTS AIRBUS S.A.S.'S, AIRBUS
NORTH AMERICA CUSTOMER SERVICES INC.'S, GOODRICH
CORPORATION'S, AND IAE INTERNATIONAL AERO ENGINES AG'S
MOTION TO DISMISS BASED ON THE *FORUM NON CONVENIENS* DOCTRINE**

## TABLE OF CONTENTS

**PAGE**

Table of Authorities ............................................................................................................... i

Introduction ..............................................................................................................................1

I. Only One of the 77 Plaintiffs Is A U.S. Citizen or Resident ..............................1

II. The Private Interest Factors Strongly Favor Dismissal to Brazil .......................2

    *Access to Evidence Will be Better and Less Costly in Brazil* ............................2

    *No Compulsory Process over Unwilling Witnesses in this Forum* ....................3

    *Cost of Obtaining Attendance of Willing Witnesses in this Forum is Great* .......3

    *Inability to Implead Liable Third Parties in this Forum* ....................................4

III. The Public Interest Factors Also Strongly Favor Dismissal to Brazil ................5

    *Brazil's Interest in these Cases is Paramount* ...................................................5

    *Choice of Law* ....................................................................................................6

    *Administrative Burdens are Heavy* ...................................................................7

IV. The Merits Discovery that Plaintiffs Insisted on Conducting Does Not Justify Denying the FNC Motion ........................................................................8

CONCLUSION ......................................................................................................................10

# TABLE OF AUTHORITIES

**Cases** **Page**

*Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983) ...............................................................2

*Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318 (S.D. Fla. 2006) ...................1, 7

*Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493 (S.D.N.Y. 2007) .........................................3, 6, 7

*Ford v. Brown*, 319 F.3d 1302 (11th Cir. 2003) .......................................................................10

*Gonzalez v. Naviera Neptune*, 832 F.2d 876 (5th Cir. 1987)...................................................10

*In re Air Crash Near Athens Greece on August 14, 2005*, 479 F. Supp. 2d 792
    (N.D. Ill. 2007)......................................................................................................................2

*In re Air Crash Over the Taiwan Straits on May 25, 2002*,
    331 F. Supp. 2d 1176 (C.D. Cal. 2004) ...............................................................................2

*King v. Cessna Aircraft Co.*, 562 F.3d 1374 (11th Cir. 2009) (per curiam) ..............................1, 10

*Lony v. DuPont*, 935 F.2d 604 (3d Cir. 1991...............................................................................7

*McDonald's Corp. v. Bukele*, 960 F. Supp. 1311 (N.D. Ill. 1997) ..................................................4

*Miller v. Boston Sci. Corp.*, 380 F. Supp. 2d 443 (D.N.J. 2005) .....................................................4

*Melgares v. Sikorsky Aircraft Corp.*, 613 F. Supp. 2d 231 (D. Conn. 2009)...................................6

*Nai-Chao v. Boeing Co.*, 555 F. Supp. 9 (N.D. Cal. 1982).............................................................2

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)................................................................1, 2, 5, 6, 7

*Pollux Holding v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ........................................2

*Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279 (11th Cir. 2001) (per curiam) .........................2

*Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512 (11th Cir. 1985).....................................................10

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).....................................................................5

*Windt v. Qwest Communications Int'l, Inc.*, 544 F. Supp. 2d 409 (D.N.J. 2008)...........................9

*Windt v. Qwest Comms. Int'l*, 529 F.3d 183 (3d Cir. 2008) .........................................................7

## INTRODUCTION

Plaintiffs do not dispute that Brazil is an adequate and available forum. Plaintiffs also do not deny that, unlike this Court, a Brazilian court will have complete access to all witnesses and evidence, can exercise jurisdiction over all liable third parties, including Infraero and ANAC, and can render verdicts as to all claims and parties. These are among the reasons why this forum is inconvenient and conducting scores of trials here, as plaintiffs propose, will be oppressive, vexatious, and prejudicial.1 Indeed, plaintiffs also do not dispute that federal courts have applied the *forum non conveniens* doctrine to dismiss virtually every wrongful-death claim brought by foreign plaintiffs in connection with foreign aviation accidents, **including virtually identical claims by Brazilian plaintiffs**. *See* FNC Motion at 19-20; Ex. 1 to FNC Supp. Rather than address these dispositive issues, plaintiffs' response consists of little more than distortions of the record and arguments squarely rejected by the Supreme Court in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1982). All that remains of plaintiffs' response are arguments taken **word-for-word** from the brief plaintiffs' lawyers filed before the Eleventh Circuit in *King v. Cessna Aircraft Co.*, 562 F.3d 1374 (11th Cir. 2009) (per curiam), another case they brought in this District on behalf of a group of foreign citizens and one U.S. citizen in connection with a foreign aviation accident.2 The Eleventh Circuit summarily rejected those arguments; plaintiffs do not provide any sound reason why this Court should disregard this binding precedent or reach a different outcome.

### I. Only One of the 77 Plaintiffs is a U.S. Citizen or Resident

At the outset, plaintiffs concede that *Tazoe* is the only case that involves a U.S. citizen or resident and the remaining 76 separate cases are all brought by foreign citizens and residents. Resp. at 4-5. By abandoning their earlier attempts to tie the *Prouty* and *Canfield* cases to the U.S., plaintiffs must admit that the 76 foreign plaintiffs' decision to sue in the U.S. only receives "little deference," *Da Rocha v. Bell Helicopter Textron*, 451 F. Supp. 2d 1318, 1323 (S.D. Fla.

---

1  To the extent plaintiffs contend that the Court cannot dismiss their claims unless it finds that this is an inconvenient forum and that they selected it in order to vex, harass, or oppress, Resp. at 5, 19, their argument has no merit whatsoever. The very reason that the Court analyzes the private interest factors—which plaintiffs largely ignore—is to determine whether trials here would be inconvenient and, therefore, vexatious, harassing, or oppressive. *See Piper Aircraft*, 454 U.S. at 241. Applying this proper standard, there is little doubt that dismissal is warranted.

2  Excerpts of the brief are attached as Exhibit 1. Unless specifically stated otherwise, all exhibits are attached to the declaration of Alvin F. Lindsay, dated July 27, 2009.

2006), and their lengthy discussion about the need for positive evidence of unusually extreme circumstances can only apply in *Tazoe*. Yet even as to Tazoe, plaintiffs concede his citizenship is not an "'automatic[] bar[]'" to dismissal. Resp. at 5 (citation omitted). And, in fact, recognizing that U.S. citizenship does not carry "talismanic significance," *Pollux Holding v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003), federal courts have repeatedly dismissed domestic plaintiffs who, like Tazoe, try to act as an anchor for foreign plaintiffs in U.S. courts.[3]

## II. The Private Interest Factors Strongly Favor Dismissal to Brazil

*Access to Evidence Will be Better and Less Costly in Brazil.* Plaintiffs cannot realistically dispute that most of the liability evidence is in Brazil, including current and former TAM employees, everyone indicted by Brazilian prosecutors and those who maintained and operated Congonhas Airport, the wreckage and original data from the digital flight data and cockpit voice recorders ("DFDR" and "CVR"), and, of course, Congonhas Airport. Ex. 2; FNC Motion at 27-31; FNC Supp. at 9-10. Access to evidence will undeniably be better in Brazil.[4]

The few arguments that plaintiffs advance about the location of liability evidence are unsupported by the record. First, CENIPA, not the NTSB, conducted the two-year investigation of the Accident **in Brazil**. Second, CENIPA investigators took the DFDR and CVR to an NTSB lab in Washington, D.C., where CENIPA extracted the data, outside the presence of NTSB representatives, and then returned to Brazil with the DFDR, CVR, and their original memory chips. Ex. 3; FNC Supp. at 15 n.11. Third, Manufacturing Defendants do not have access to the original raw DFDR and CVR data, which are in Brazil. Ex. 4 at 102. Fourth, the throttle Artificial Feel Unit was sent by CENIPA to France where it was scanned and then returned to CENIPA for additional testing in Brazil. Ex. 5. Moreover, plaintiffs ignore all the other liability evidence that is in Brazil. Ex. 2. Thus, contrary to plaintiffs' erroneous assertions, almost all the liability evidence is in Brazil.

---

[3] *See Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1281 n.1 (11th Cir. 2001) (per curiam); *Cheng v. Boeing Co.*, 708 F.2d 1406, 1408 (9th Cir. 1983); *In re Air Crash Near Athens Greece*, 479 F. Supp. 2d 792, 798 (N.D. Ill. 2007); *In re Air Crash Over Taiwan Straits*, 331 F. Supp. 2d 1176, 1179 n.5 (C.D. Cal. 2004); *Nai-Chao v. Boeing Co.*, 555 F. Supp. 9, 10, 11 (N.D. Cal. 1982).

[4] Congonhas Airport is in the middle of São Paulo's sprawl and runway 35L ends above a multi-lane freeway and is surrounded by skyscrapers. Because "[t]rial would be aided by familiarity with [Brazilian] topography," the Accident's location favors dismissal. *Piper Aircraft*, 454 U.S. at 242.

Plaintiffs have even less to say about the location of and access to damages evidence and contend only that "nearly all of the documentary evidence relating to the damage claims ha[s] already been produced." Resp. at 15. Not so. Gaping holes remain in almost all of the plaintiffs' discovery responses, Ex. 6, even after the plaintiffs were ordered by the Court to respond completely. (D.E. 280) Clearly, a significant portion of the damages evidence is still in Brazil, Ex. 7, a fact that even TAM recognized in its Rule 26 Initial Disclosures. Ex. 8 ¶ 62.

Moreover, the only documents that plaintiffs produced are the ones that they self-selected to support their damage claims. For example, plaintiffs make the far-fetched claim that Brazilian doctors do not keep medical records, Ex. 9 at 50:3, so most plaintiffs did not produce any medical records while some responded with self-serving declarations from a group of hand-picked Brazilian physicians. If the cases remain here, Manufacturing Defendants will not be able to cross-examine plaintiffs' healthcare providers about their declarations. Similarly, plaintiffs' and decedent's employers, friends, and family members are all in Brazil and will not be subject to process by this Court, FNC Supp. at 9-10, even though they are all crucial damages witnesses. Manufacturing Defendants' inability to obtain access to this evidence for more than 150 Brazilian plaintiffs, claimants, and decedents, **on its own**, heavily favors dismissal. *See* FNC Motion at 30-31.5

*No Compulsory Process over Unwilling Witnesses in this Forum.* Plaintiffs completely ignore the third-party witnesses identified by Manufacturing Defendants who will not be subject to compulsory process in this forum. FNC Motion at 31-33; FNC Supp. at 11-12. This includes third-party witnesses, damages witnesses, airline pilots who landed at Congonhas on the day of the Accident, and all the individuals who were indicted by Brazilian prosecutors in connection with the Accident. Manufacturing Defendants will only be able to obtain this crucial testimony through letters rogatory, **if at all**, but this is a time-consuming and prejudicial substitute. FNC Motion at 32-33. A Brazilian court will have full access to all these witnesses and their documents.

---

5 Plaintiffs' discovery responses remain incomplete, but Manufacturing Defendants have already identified at least 20 cases in which the plaintiff named in the complaint is not the personal representative of the decedent's estate. Ex. 10-49; FNC Supp. at 6-8. This "raises a serious question as to the extent to which the plaintiffs are actually participating in this litigation." *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 496 (S.D.N.Y. 2007).

3

*Cost of Obtaining Attendance of Willing Witnesses in this Forum is Great.* Plaintiffs are equally silent about the enormous costs associated with transporting willing parties and witnesses to trials in this forum, where few, if any, relevant fact witnesses reside. *See* FNC Motion at 33-34; Supp. at 12-13. Trials in Brazil, where the plaintiffs, claimants, TAM representatives, and other willing witnesses live, will be far less costly.

*Inability to Implead Liable Third Parties in this Forum.* Apparently conceding that Manufacturing Defendants cannot implead ANAC, and may not be able to implead Infraero, plaintiffs attempt to limit these cases to their product-liability claims. Resp. at 16-19. The purpose of this exercise is to obscure the obvious prejudice to Manufacturing Defendants of presenting their defenses in trials in a forum without ANAC and Infraero. Federal courts have rejected this strategy in the *forum non conveniens* context and held they must consider all claims and "any potential defenses." *Miller v. Boston Sci. Corp.*, 380 F. Supp. 2d 443, 454 (D.N.J. 2005). Plaintiffs cannot "advance both [their] own claims as well as limit the defenses which [Manufacturing Defendants] may present. This [they] cannot do." *McDonald's Corp. v. Bukele*, 960 F. Supp. 1311, 1319 (N.D. Ill. 1997).

In support of their argument, plaintiffs insist that the third-party complaint against Infraero is "so much smoke" because an Airbus witness, Yannick Malinge, "conceded" that the Accident Aircraft "had plenty of room to stop . . . if the TAM pilots had not left the throttle for the number 2 engine in the climb position." Resp. at 18. This is not what Mr. Malinge said. Mr. Malinge actually testified that the Landing Distance Available (LDA) at Congonhas Airport "is compatible with the landing performance capability of the airplane," but that "**[t]his . . . does not take into account whatever specific conditions, requirements, particularities [that] might exist on this airfield or not**." Ex. 50 at 159:14-20 (emphasis added). In other words, "**specific conditions**" at Congonhas probably contributed to the Accident, even if Airbus's stated Required Landing Distance for the Accident Aircraft was less than the LDA at Congonhas. *Id.* at 172:23-173:3 (emphasis added). Mr. Malinge's testimony finds additional support in the indictments issued by Brazilian prosecutors of TAM, Infraero, and ANAC employees, sworn admissions of several TAM witnesses, Ex. 51-52, and the releases that plaintiffs issued to Infraero and ANAC. FNC Supp. at 4. Plaintiffs pointedly ignore these facts.

Plaintiffs next argue that the "only sensible resolution" is to "bifurcate [the] claims against the Brazilian entities, allow the plaintiffs' claims against the U.S. and French defendants

4

to proceed to judgment, and then dismiss the defendants' claims against the Brazilian entities for *forum non conveniens* if their right to contribution should ever arise." Resp. at 18. This "sensible resolution" should be rejected for the following reasons.

First, federal procedure "strongly encourage[s]" the "joinder of claims, parties and remedies." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Forcing Manufacturing Defendants to pursue their claims in Brazil after having litigated plaintiffs' liability claims in the U.S. is contrary to this avowed policy and would create unnecessary piecemeal litigation and could lead to inconsistent results. Granting the FNC Motion will ensure that all claims before this Court are joined and tried in the same jurisdiction.

Second, plaintiffs' proposal means that Manufacturing Defendants would have to prove Infraero's and ANAC's liability through an "empty chair" without access to their evidence and witnesses (including the employees who were indicted by Brazilian prosecutors). FNC Supp. at 11-12. This creates an untenable risk of prejudice to Manufacturing Defendants and confirms that trials here will be inconvenient and oppressive. *Piper Aircraft*, 454 U.S. at 259.

Third, the Supreme Court in *Piper Aircraft* already rejected plaintiffs' argument that bifurcation is preferable to dismissing a plaintiff's wrongful-death claims to a forum that can exercise jurisdiction over all potentially relevant parties. *Id*. Requiring defendants found liable after trial in the U.S. to then file contribution or indemnity actions in a foreign jurisdiction would be "burdensome," and that "[f]inding," the Supreme Court explained, "is sufficient to support dismissal on grounds of *forum non conveniens*." *Id*.

### III. The Public Interest Factors Also Strongly Favor Dismissal to Brazil

*Brazil's Interest in these Cases is Paramount*. Plaintiffs first insist that the 77 separate cases should remain in the U.S. "because U.S. courts have a strong interest in deterring negligent conduct by U.S. corporations."[6] Resp. at 11. An avalanche of precedent holds just the opposite: The "incremental deterrence that would be gained" by trying an allegedly negligent aircraft manufacturer in a U.S. court "is likely to be insignificant." *Piper Aircraft*, 454 U.S. at 260-61;

---

[6] Plaintiffs mischaracterize Airbus as having "numerous offices" in the U.S., "including a subsidiary" in Florida, and its North American headquarters in Virginia. Resp. at 2, 9, 16. This is untrue. Airbus's principal place of business is in Toulouse, France. FNC Motion at 15. Airbus North America Customer Services, Inc., a completely separate Defendant in this case, is a subsidiary of Airbus Americas, Inc., both of which maintain their principal places of business in Herndon, Virginia. *Id*. at 16. To be clear, **Airbus does not have any offices in the U.S.**

5

*see* Ex. 1 to FNC Supp. When foreign plaintiffs bring wrongful death claims in connection with a foreign aviation accident, as is true here and in *Piper Aircraft*, "[t]he American interest in th[e] accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the cases were to be tried here." *Id*. at 261. The administrative, civil, and criminal investigations ongoing in Brazil will deter negligent conduct and attest to Brazil's strong interest in the Accident. FNC Motion at 38-39; Supp. at 15-16.[7]

Next, plaintiffs allege that their cases are "of *international* interest, not merely of interest to Brazil," because Airbus aircraft allegedly flying with inoperative thrust reversers have been involved in other runway excursions, including three incidents in the U.S., and regularly operate in the U.S. Resp. at 7. But even if plaintiffs' allegations about other incidents were true, and they absolutely are not, they still would not establish a U.S. interest in plaintiffs' cases; rather, plaintiffs just expose that their true goal is to transform the federal judiciary into a roving international air-safety tribunal and ensure that "American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive." *Piper Aircraft*, 454 U.S. at 252. As one federal court explained in response to the same argument, "Contrary to the plaintiffs' apparent belief, the primary purpose of this litigation is not to determine the general safety of the Sikorsky model S-61N, but rather to determine whether the defendants are liable for the injuries resulting from the July 8, 2006 Helicsa crash in Tenerife, Spain." *Melgares v. Sikorsky Aircraft Corp.*, 613 F. Supp. 2d 231, 249 (D. Conn. 2009). This reasoning applies equally to plaintiffs' unfounded allegations about the Accident Aircraft, which was not designed or built in the U.S.

Finally, and unsurprisingly, plaintiffs neglect to mention that one of the alleged prior incidents was already the subject of litigation in the U.S., but that case was dismissed based on the *forum non conveniens* doctrine. *Esheva*, 499 F. Supp. 2d at 500-01. In *Esheva*, Russian

---

[7] The few cases cited by plaintiffs from outside the Eleventh Circuit are inapposite and involved product-liability actions that were filed in the defendants' home jurisdiction or a jurisdiction in which a significant proportion of the operative facts had taken place. Resp. at 11. This is equally true of plaintiffs' supplemental authority from Illinois state court. The present cases are different. Florida is not the home jurisdiction for any of the Manufacturing Defendants and none of the operative facts took place in Florida. Even if Florida had a connection to the Accident, *Piper Aircraft*, which affirmed dismissal of a case from a defendant's home forum, confirms that there is no rule requiring courts to retain jurisdiction over any subset of cases. 454 U.S. at 239, 241.

plaintiffs, **represented by the same legal counsel who represent plaintiffs in these cases**, brought wrongful-death claims in connection with the crash of a Russian aircraft in Russia. The *Esheva* court held that Russia had a "strong interest in responding to an accident that occurred in its territory, that injured many of its citizens, and that involved a Russian airline." *Id*. at 500. Plaintiffs do not provide any reason to conclude that the U.S. interests in these cases are any greater than they were in *Esheva*.[8] Nor do they provide any reason to conclude that this forum's interests are any greater than Brazil's. "[F]or reasons that should be obvious, . . . Brazil has a far stronger local interest in deciding these controversies." *Da Rocha*, 451 F. Supp. 2d at 1325.

*Choice of Law*. Plaintiffs do not dispute that foreign law will almost certainly govern the complex liability, damages, and third-party liability issues in these cases, and instead only note that the Court has yet to "determine[] whether Brazilian law or U.S. law will apply." Resp. at 15. This is exactly the point: The **need** to engage in a complex comparative-law analysis is enough to "point the trial court towards dismissal." *Piper Aircraft*, 454 U.S. at 260.

Plaintiffs next argue that, if Brazilian law does come into play, it will be "easy to apply" because Brazil recognizes strict liability and negligence and "these causes of action are staples of U.S. law" with which "the court is . . . intimately familiar." Resp. at 15. Plaintiffs are wrong. If Brazilian law applies, then the Court will apply **the Brazilian law of strict liability and negligence**. Plaintiffs' counter-intuitive claim rests on an alleged statement by Manufacturing Defendants' Brazilian-law expert that it would be "straightforward and easy to apply" Brazilian law. Resp. at 15. Like so many of plaintiffs' arguments, this one is made up out of whole cloth as Manufacturing Defendants' expert never opined on the ease of application of Brazilian law by a U.S. court.

*Administrative Burdens are Heavy*. Plaintiffs also attempt to minimize the administrative burdens that these 77 separate cases pose by arguing that the Court will only need to conduct one

---

[8] There is nothing remotely "curious" about Manufacturing Defendants' desire to defend themselves in Brazil, which is closer to the evidence and in which they can implead liable parties. Resp. at 9-10 (quoting *Lony v. DuPont*, 935 F.2d 604, 608 (3d Cir. 1991)). Unlike in *Lony*, none of the Manufacturing Defendants maintains its principal place of business in Florida and none of the relevant facts occurred in Florida. *See Windt v. Qwest Comms. Int'l*, 529 F.3d 183, 191 (3d Cir. 2008) (distinguishing *Lony*). Airbus North America Customer Services has an office in Miami, Florida, but it did not train the flight crew on the Accident Aircraft, Ex. 53, and was not involved in the design, manufacture or placement of the Accident Aircraft into the stream of commerce. FNC Motion at 16-17.

7

liability trial and then, if Manufacturing Defendants are found liable, the parties will settle. Resp. at 16. But plaintiffs cannot possibly know if the parties will settle: "The prediction about how many trials will be necessary is . . . nothing more than a guess." *Esheva*, 499 F. Supp. 2d at 500. Further, plaintiffs' contention that the parties will settle simply reflects their recognition that conducting 77 trials would be an enormous strain on the Court's resources. Bifurcation also means duplicative proceedings and underscores the administrative burdens these cases entail.9

## IV. The Merits Discovery that Plaintiffs Insisted on Conducting Does Not Justify Denying the FNC Motion

Plaintiffs devote the largest portion of their response to their argument that Manufacturing Defendants "gam[ed] the system" by waiting until January 16, 2009 before filing the FNC Motion and used the intervening time to conduct pretrial discovery that is otherwise unavailable in Brazil. Resp. at 12. This argument is fatally flawed in at least four respects.

First, plaintiffs twice opposed attempts to stay liability discovery pending resolution of the *forum non conveniens* issues. At the May 21, 2008 hearing, before Airbus had been served or even appeared, plaintiffs opposed the suggestion by Defendants who had appeared that the Court order *forum non conveniens* discovery be conducted first by describing it as "a disaster" and insisting that merits discovery proceed immediately. Ex. 54 at 15:21. Plaintiffs subsequently opposed Defendants' proposal in the Joint Planning and Scheduling Report that the parties engage in phased discovery, focusing on the *forum non conveniens* issues and only then proceeding to merits discovery. (D.E. 38 at 3) In light of plaintiffs' opposition, the Court rejected Defendants' requests to bifurcate merits and *forum non conveniens* discovery, scheduled a fact-discovery cutoff date of July 15, 2009 for **all issues** (D.E. 40), and noted that *forum non conveniens* should be "the first issue out of the gate." Ex. 54 at 17:22. Having consistently argued against requests for the Court to stay merits discovery until after it resolved the *forum non conveniens* issues, plaintiffs cannot now point to the fact that some merits discovery took place as a reason why *forum non conveniens* dismissal is inappropriate.

Second, Manufacturing Defendants properly raised the *forum non conveniens* issues in their first responsive pleadings and then timely filed the FNC Motion. (D.E. 13 ¶ 36, 19 at 10,

---

9  The absence of an "MDL panel" in Brazil is immaterial. Resp. at 16. These cases are not before this Court on an MDL referral and, more importantly, plaintiffs do not dispute that consolidated trials are possible in Brazil. *See* FNC Motion, Rosenn Decl. ¶¶ 50-53.

8

142 at 9) Indeed, the day after plaintiffs reversed more than a year and a half of representations to the Court (D.E. 6, 41) and finally confessed that they were not going to serve process on Airbus S.A.S. in the *Tazoe* and Additional Federal Actions (D.E. 89), Manufacturing Defendants each filed the FNC Motion in those cases in which they had been served.10 Plaintiffs' decision to abandon their claims against Airbus in the *Tazoe* and Additional Federal Actions—Airbus was never served in those cases—confirms that Manufacturing Defendants were justified in filing the FNC Motion only after plaintiffs belatedly decided which Defendants they planned to pursue.

Third, and perhaps most importantly, after Manufacturing Defendants timely filed the FNC Motion, instead of responding to it, plaintiffs filed a motion for extension of time to respond until 30 days after the end of all fact discovery. (D.E. 98, 123, 135) Plaintiffs contended at the time that they needed to conduct "meaningful discovery" on forum issues and the merits (D.E. 98 at 5) because only a "little discovery" had taken place. (D.E. 135 at 1) While Manufacturing Defendants vigorously opposed any extension (D.E. 110-12, 185), the July 15 fact-discovery cutoff left them no choice but to proceed with discovery or risk not being prepared for trials. In light of their well-documented tactics, "[i]t would be indeed anomalous . . . to allow Plaintiffs to demand and obtain significant discovery just so Plaintiffs would be able use the very fact of this discovery as a tool to thwart Defendants' [FNC] Motion." *Windt v. Qwest Communications Int'l, Inc.*, 544 F. Supp. 2d 409, 427 (D.N.J. 2008).

The record, moreover, confirms that almost all of the limited discovery that was conducted, was **after** Manufacturing Defendants filed the FNC Motion and plaintiffs filed their motion for an extension. On the damages side, only 7 of 77 plaintiffs had responded to written discovery requests, all of which responses were shockingly incomplete and devoid of verified interrogatories, and no plaintiffs' depositions had been taken. On the liability side, TAM had produced some documents in late 2008 and the parties had taken two TAM depositions, one on the day before the FNC Motion was filed and the other on the day the FNC Motion was filed. No other discovery was conducted before the time plaintiffs were required to serve a response to the FNC Motion pursuant to the Federal Rules. If plaintiffs had responded on the merits to the FNC Motion, instead of moving for an extension of time, there would have been little to no discovery conducted in these cases. If plaintiffs feel aggrieved that they had to engage in a

---

10 Airbus timely filed the FNC Motion in the Third *Tazoe* Action on April 15, 2009, less than 30 days after plaintiffs filed notice of service of process. (08-23434; D.E. 34, 54)

9

limited amount of discovery they should look no further than their own counsel who purposefully pursued discovery in order to manufacture a basis for opposing the FNC Motion.11

Finally, plaintiffs are also wrong to suggest that merits discovery and *forum non conveniens* are incompatible. The cases plaintiffs cite actually hold that discovery is merely one issue that courts take into account when they weigh the private and public interest factors. With at least 75 liability and 100 damages depositions remaining and no expert or non-party discovery conducted to date, Ex. 55-56, it is beyond dispute that discovery is far from complete and the discovery that has taken place, Ex. 57, pales in comparison to other cases that were dismissed on *forum non conveniens* grounds. *Ford v. Brown*, 319 F.3d 1302, 1312 (11th Cir. 2003) (years of discovery) (concurring); *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1520-20 (11th Cir. 1985) ("lengthy discovery" and case "ready to be tried on the merits"); *Gonzalez v. Naviera Neptune*, 832 F.2d 876, 881 (5th Cir. 1987) (after trial).

## CONCLUSION

The balance of private and public interest factors in the 76 cases brought by foreign plaintiffs weighs heavily in favor of dismissal to Brazil. A Brazilian court will have better and less-costly access to the evidence and witnesses, can obtain jurisdiction over the liable parties, and has a far more substantial interest in the Accident and familiarity with the governing law. FNC Motion at 43-45. Dismissal is also warranted in *Tazoe*. *Id*. at 44. Even accounting for the deference afforded his choice of forum, trying the case here creates a substantial risk of prejudice to Manufacturing Defendants, who will not have access to witnesses and evidence and will be unable to implead liable parties, and creates a risk of inconsistent verdicts. The numerous Brazilian civil actions and criminal and administrative investigations into the Accident also underscore Brazil's greater interest in the Accident. For these reasons, the Court should dismiss all of the plaintiffs' cases to Brazil.

---

11  Remarkably, this is not the first time that counsel for plaintiffs have tried this gambit. In *King*, they sought an extension to respond to a *forum non conveniens* motion, Ex. 58-59, and then argued that discovery precluded dismissal, Ex. 1 at 44-47; Ex. 60 at 4. The District Court and the Eleventh Circuit rejected this tactical use of discovery. The fact that plaintiffs' opposition ignores the discovery that they insisted on taking and only parrots arguments their lawyers made, unsuccessfully, in *King* underscores that their request for additional time to respond to the FNC Motion was made for tactical reasons only and plaintiffs did not have a legitimate need for additional time to respond to the FNC Motion.

Dated: 27 July, 2009

Respectfully submitted,

| | |
|---|---|
| Richard M. Dunn, Esq.<br>rmdunn@cozen.com<br>Raquel Fernandez, Esq.<br>Refernandez@cozen.com<br>COZEN O'CONNOR<br>Wachovia Financial Center<br>200 South Biscayne Boulevard<br>Suite 4410<br>Miami, FL 33131-2303<br>Telephone: (305) 704-5940<br>Facsimile: (305) 704-5955<br>***Attorneys for Defendant IAE International Aero Engines AG***<br><br>Thomas E. Scott, Esq.<br>Scott@csklegal.com<br>Scott A. Cole, Esq.<br>sac@csklegal.com<br>COLE SCOTT & KISSANE, P.A.<br>Dadeland Centre II<br>9150 South Dadeland Blvd., Suite 1400<br>Miami, Florida 33156<br>Tel: (305) 350-5300<br>Fax: (305) 373-2294<br>***Attorneys for Defendant Goodrich Corp.*** | s/Alvin F. Lindsay<br>Alvin F. Lindsay (FBN 939056)<br>AFLindsay@hhlaw.com<br>HOGAN & HARTSON LLP<br>1111 Brickell Avenue, Ste. 1900<br>Miami, Florida 33131<br>Tel.: (305) 459-6500<br>Fax: (305) 459-6550<br><br>Thad T. Dameris, Esq.<br>TDameris@hhlaw.com<br>Trevor R. Jefferies, Esq.<br>TRJefferies@hhlaw.com<br>Bruce D. Oakley, Esq.<br>BDOakley@hhlaw.com<br>Christopher M. Odell, Esq.<br>CMOdell@hhlaw.com<br>HOGAN & HARTSON LLP<br>Pennzoil Place<br>700 Louisiana Street, Suite 4300<br>Houston, Texas 77002<br>Tel.: (713) 632-1400<br>Fax: (713) 632-1401<br><br>***Attorneys for Airbus S.A.S. and Airbus North America Customer Services, Inc.*** |

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 27, 2009, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                                s/Alvin F. Lindsay

**SERVICE LIST**

| | |
|---|---|
| Steven C. Marks, Esq.<br>smarks@podhurst.com<br>Aaron S. Podhurst, Esq.<br>apodhurst@podhurst.com<br>Ricardo M. Martinez-Cid, Esq.<br>rmcid@podhurst.com<br>PODHURST ORSECK, P.A.<br>25 West Flagler Street<br>Suite 800<br>Miami, Florida 33130<br>Tel: (305) 358-2800<br>Fax: (305) 358-2382<br>*Attorneys for Plaintiffs* | John J. Uustal, Esq.<br>johnuustal@justiceforall.com<br>KELLEY UUSTAL, PLC<br>700 S.E. 3rd Avenue<br>Suite 200<br>Fort Lauderdale, FL 33316<br>Telephone: (954) 522-6601<br>Facsimile: (954) 522-5667<br>*Attorneys for Plaintiffs* |
| John C. Duane, Esq.<br>jduane@motleyrice.com<br>Motley Rice LLC<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464<br>Telephone: (843) 216-9237<br>Facsimile: (843) 216-9450<br>*Attorney for Plaintiffs* | Christopher E. Knight, Esq.<br>cknight@fowler-white.com<br>Helaine S. Goodner, Esq.<br>hgoodner@fowler-white.com<br>FOWLER WHITE BURNETT<br>Espirito Santo Plaza<br>1395 Brickell Avenue, 14th Floor<br>Miami, FL 33131<br>Telephone: (305) 789-9200<br>Facsimile: (305) 789-9201<br>*Attorneys for Defendant TAM Linhas Aéreas* |
| Lyndall M. Lambert, Esq.<br>lyndall.lambert@hklaw.com<br>HOLLAND & KNIGHT LLP<br>701 Brickell Avenue, Suite 3000<br>Miami, FL 33131<br>Telephone: (305) 374-8500<br>Facsimile: (305) 789-7799<br>*Attorney for Defendant Pegasus Aviation IV, Inc.* | |