UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
**CASE NO. 07-21941-CIV-COOKE/McAliley**

**ROBERTO TAZOE,**
**as Personal Representative of the Estate**
**of RICARDO TAZOE, Deceased,**

    *Plaintiff*,

**v.**

**TAM LINHAS AEREAS,** *et al.,*

    *Defendants.*

_____/

**ORDER ON DEFENDANTS AIRBUS S.A.S., AIRBUS NORTH AMERICA CUSTOMER SERVICES, INC., GOODRICH CORPORATION, AND IAE INTERNATIONAL AERO ENGINES AG'S JOINT MOTION TO DISMISS ON THE GROUNDS OF *FORUM NON CONVENIENS***

    **THIS MATTER** is before the Court upon Defendants AIRBUS S.A.S., AIRBUS

NORTH AMERICA CUSTOMER SERVICES, INC., GOODRICH CORPORATION, AND

IAE INTERNATIONAL AERO ENGINES AG'S Joint Motion to Dismiss on the Grounds of

*Forum Non Conveniens* [DE 92].  The motion is fully briefed, the Court heard oral argument on

August 5, 2009, and has considered all the relevant filings of the parties, including the

supplemental brief filed by Defendants[1] [DE 310].

**I.  BACKGROUND**

    On July 17, 2007, TAM Linhas Aereas Flight 3054, a scheduled domestic flight

---

[1]For reasons not requiring discussion here, TAM Linhas Aereas ("TAM") did not join with the other named Defendants in the *forum non conveniens* motion.  Neither, however, did TAM file any opposition to the motion.  Throughout the rest of this Order, Defendants Airbus S.A.S., Airbus North America Customer Services, Inc., Goodrich Corporation, and IAE International Aero Engines AG shall be referred to collectively as the "Manufacturing Defendants."

originating in Porto Alegre, Brazil landed at Congonhas International Airport in Sao Paulo, Brazil and overran the runway, crashing into a warehouse and fueling station, and killing all one-hundred-and-eighty-one passengers, six crew members, and twelve people on the ground. It appears that all but one of the persons killed were Brazilian citizens or residents. Of the seventy-seven Plaintiffs in these cases, only one is a U.S. citizen, Roberto Tazoe ("Mr. Tazoe"). The crash was the worst in Brazilian aviation history and sparked this litigation, litigation in Brazil, two parliamentary inquiries in Brazil, two criminal investigations in Brazil which have resulted in multiple indictments, as well as an investigation by the Centro de Investigação e Prevenção de Acidentes Aeronáuticos ("CENIPA"), Brazil's counterpart to the United States' National Transportation Safety Board ("NTSB"). The wreckage is located in Brazil. Although the cockpit voice recorder ("CVR") and digital flight data recorder ("DFDR") where analyzed by CENIPA at NTSB laboratories in Washington, D.C., both the CVR and DFDR, as well as all original data extracted from them, are now located in Brazil.

TAM Flight 3054 was an Airbus A320-233, a variant of the Airbus A320. The plane was designed and manufactured by Airbus[2] in Toulouse, France. Some design and assembly was done by Airbus-affiliated companies in Germany, but this work was overseen by Airbus personnel in France, and all final decisions regarding the design, assembly, certification and marketing of the A320 were made in France. All post-production testing on the Flight 3054 aircraft was performed in France, and all technical, operating, and training manuals for all variants of the A320 were prepared in France. Additionally, all performance monitoring of

---

[2]Airbus S.A.S. was only formed in 2006, but the first Airbus A320 entered the stream of commerce in 1988. Airbus G.I.E. was the corporate predecessor to Airbus S.A.S., is a named Defendant, and was the name of the corporate entity responsible for the design of the A320. Here, the Court simply refers to Airbus so as not to cause any confusion.

A320s and the variants was performed in France.

The engines for TAM Flight 3054 were manufactured for Airbus by IAE International Aero Engines AG ("IAE").  IAE is a Swiss-organized joint stock company with its principal place of business in Connecticut, and design and manufacturing facilities in England, Germany and Connecticut.  The engines on TAM Flight 3054 were manufactured in Derby, England and sent to France for installation.  After delivery to France, IAE performed no further work on the TAM Flight 3054 engines.

Prior to installation of the engines onto the airframe, Goodrich Corporation ("Goodrich") installed nacelles[3].  Goodrich's principal place of business is Charlotte, North Carolina, but the nacelles were designed in California and installed on the engines in France.   After installation of the nacelles Goodrich performed no further work on the engines for TAM Flight 3054.

TAM Linhas Aereas operated TAM Flight 3054 with a TAM flight crew and pilots.  The crew of this flight was trained in Brazil, although Airbus North American Customer Services, Inc. ("ANACS") did at sometime provide training to TAM pilots in Miami, Florida.  ANACS' principal place of business is Herndon, Virginia.  The aircraft was leased to TAM by Pegasus Aviation IV, Inc. ("Pegasus"), an aircraft leasing company with its principal place of business in San Francisco, California.

## II. ANALYSIS

The Court is required to perform two separate, but exceptionally closely related analyses here.  First, the Court must perform the *forum non conveniens* inquiry with regard to the seventy-six foreign Plaintiffs.  Then, the Court will turn to Mr. Tazoe, the sole United States

---

[3]"An enclosed shelter on an aircraft for an engine or sometimes for the crew." *Webster's Third New International Dictionary* (unabridged) 1499 (2002).

citizen Plaintiff, and perform the same inquiry, taking into account any possible difference in deference afforded to a citizen's choice of forum.  In both situations, to obtain dismissal on *forum non conveniens* grounds, the Manufacturing Defendants "must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."  *Leon v. Million Air, Inc.*  251 F.3d 1305, 1310-11 (11th Cir. 2001).

### A.  The Seventy-Six Foreign Plaintiffs

#### 1.  Availability of an Adequate Alternative Forum

The availability of a forum and its adequacy are separate inquiries.  "Ordinarily, [availability]  will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."  *Piper Aircraft Co. v. Reyno*,  454 U.S. 235, 255 n.22 (1981).  And, "[a]n alternative forum is presumed adequate unless the plaintiff makes some showing to the contrary."  *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1322 (S.D. Fla. 2006) (quotation marks and citation omitted).  Here, both requirements are met.

Manufacturing Defendants have agreed, as conditions of dismissal, to consent to service of process in Brazil and to jurisdiction of a Brazilian civil court, to toll any applicable statute of limitations in Brazil, to make relevant witnesses and documents under their respective possession, custody or control available to a Brazilian civil court upon appropriate request, and to respect any final post-appeal judgment entered by a Brazilian civil court.  Additionally, both TAM and Pegasus appear subject to jurisdiction in Brazil.  TAM is a Brazilian corporation and the suits against it arise from actions and obligations that were to be performed in Brazil by TAM and its employees.  Similarly, for Pegasus, although it is a U.S. corporation, it is alleged to

have failed to perform certain obligations in Brazil in regard to the aircraft it leased to TAM in Brazil. By their consent to jurisdiction and other stipulations, as well as the evidence that both TAM and Pegasus are amenable to process in Brazil, Manufacturing Defendants have met their burden to show that Brazil is an available forum.

Adequacy is not in doubt. Courts have recently found Brazil to be an adequate forum for cases very similar to these. *See e.g.*, *Da Rocha*, 451 F. Supp. 2d at 1322 (finding, in a suit involving a helicopter crash in Brazil, that "this court has no reason to find other than that Brazil provides Plaintiffs with an adequate alternative forum"); *In Re Air Crash Near Peixoto de Azeveda, Brazil*, 574 F. Supp. 2d 272, 284-85 (E.D.N.Y. 2008) ("The Court therefore finds that any delay in Brazil is sufficiently minimal, relative to the U.S., that Brazil should be considered an adequate forum. This determination is consistent with several other courts that have found Brazil to be an available and adequate forum for a variety of claims.") (citations omitted). Moreover, Manufacturing Defendants have presented unrebutted argument and evidence, including the declaration of their expert, Professor Keith S. Rosenn ("Rosenn"), that Brazilian civil courts provide Plaintiffs with equivalent causes of action and satisfactory remedies.

Of equal importance, Plaintiffs have not significantly challenged either the availability or adequacy of Brazil. At the hearing on August 5, 2009, Plaintiffs, for the first time, complained that dismissing these cases to Brazil would result in substantial delays of trials, and may cause the cases to become fragmented. Putting aside that Plaintiffs failed to raise these issues in their brief or even file a post-hearing brief further elaborating on this argument, the argument fails. The record evidence, mainly Rosenn's declaration and deposition, explains that predicting any delay is virtually impossible, but that recent reforms appear to have promoted efficiency and timely resolution of matters. Additionally, Rosenn stated that there was nothing preventing

consolidation of the cases upon re-filing in Brazil.  *See also  In Re Air Crash Near Peixoto de Azeveda*, 574 F. Supp. 2d at 283-85 (considering and rejecting similar arguments regarding consolidation and delay).  Accordingly, I find that Brazil is an adequate alternative forum available to Plaintiffs.

### 2.  Balance of Private and Public Interest Factors

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. . . .  [H]owever, that the presumption applies with less force when the plaintiff or real parties in interest are foreign."  *Piper Aircraft*, 454 U.S. at 255.  The Eleventh Circuit has elaborated on this point, holding that "the presumption that a plaintiff has chosen a sufficiently convenient forum 'weakens' when the plaintiff is a foreigner litigating far from home, and in such cases plaintiff's forum choice is accorded "less deference[.]"  *Leon*, 251 F.3d at 1315 (citations omitted).  The seventy-six foreign Plaintiffs are indeed litigating far from home (over 4000 miles, as the crow flies) and are entitled to only minimal deference.

The private interest factors to be weighed are

> the relative ease of access to sources of proof; availability of
> compulsory process for attendance of unwilling, and the cost of
> obtaining attendance of willing, witnesses; possibility of view of
> premises, if view would be appropriate to the action; and all other
> practical problems that make trial of a case easy, expeditious and
> inexpensive.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)**.**  Here, the private interest factors weigh strongly in favor of dismissal.

Ease of access to sources of proof will be far greater in Brazil.  Although Plaintiffs have identified some liability evidence which is likely in the U.S., very little or none is actually in Florida, and the vast majority appears to be in Brazil and France, with some evidence and

witnesses possibly located in California, Connecticut, North Carolina, Germany and England. In contrast, the DFDR and CVR, both of which were at one point in the U.S., have been returned to Brazil, along with the raw data extracted from them. The throttle Artificial Feel Unit, which was examined in France, has also been returned to CENIPA in Brazil for further testing. All of the remaining wreckage is also in Brazil as are all the safety and maintenance records for the Congonhas airport. Further, Manufacturing Defendants have identified a host of non-party witnesses who are located in Brazil. These include all TAM witnesses and eyewitness to the crash, air traffic controllers, employees of the corporation which administers Brazil's airports, Empresa Brasileira de Infraestrutura Aeroportuaria ("Infraero"), as well as officials with Brazil's civil aviation authority, Agencia Nacional De Aviacao Civil-Brasil (ANAC-Brasil), among others. Additionally, the crash is being investigated by CENIPA, not any U.S. agency. Damages evidence is also primarily located in Brazil, including medical records and employers, families and friends of the Plaintiffs and decedents. There is some dispute between the parties regarding how much damages evidence is left to be discovered, but there is no apparent dispute that whatever is left to be discovered is located in Brazil. Lastly, Manufacturing Defendants argue convincingly that Infraero and ANAC-Brasil may be liable parties and that proof of their liability, and thereby proof necessary to Manufacturing Defendants' defense, resides in Brazil. Plaintiffs attempt to undermine this argument by stating that Manufacturing Defendants', if found liable, can sue for apportionment or contribution. This misses the point, however; the Court is required to take into account access to evidence supporting defenses. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.* 549 U.S. 422, 432 (2007). Based on the types and amounts of evidence most likely to be relevant to these cases the Court finds that the parties will have greater access to sources of

proof in Brazil.   Accordingly, this factor weighs in favor of dismissal.

Lack of compulsory process and cost of transporting willing witnesses also militates in favor of dismissal.  Manufacturing Defendants have listed what likely amounts to dozens of witnesses (some are only identified as groups, *e.g.*, ANAC Officials and CENIPA investigators) whom this Court could not compel to testify or produce documents.  Several of the witnesses have been indicted in criminal matters related to this air crash, and would likely not be willing to voluntarily give testimony in a civil action that relates to any criminal case or charge.  Other witnesses not subject to compulsory process include doctors, employers, families and friends of the Plaintiffs and decedents.  Plaintiffs have not identified any witnesses that would not be available if these cases were dismissed to Brazil, and Manufacturing Defendants have agreed to make relevant witnesses and documents available.  In addition, the cost of transporting all of the Plaintiffs and witnesses in Brazil to the United States, thousands of miles from their homes, weighs in favor of dismissal.  This is not off-set by the fact that some witnesses from throughout the United States, France, England and Germany might have to travel to Brazil instead of Miami.

The last specific private interest factor, the ability to view the location of the accident, clearly weighs in favor of dismissal.  A significant part of the defense is likely to revolve around the location of the airport and the particular runway which was overrun, as well as the length and condition of that runway.

At least one other practical problem exists with conducting these trials in this District.  As noted earlier, Manufacturing Defendants' expect to defend, at least in part, on the grounds that Infraero and ANAC-Brasil are liable third-parties.  If these cases remain here, not only will Manufacturing Defendants be without evidence from Infraero and ANAC-Brasil, but they will

not likely be able to implead either of those parties, and would therefore be forced to defend using an "empty chair."  As acknowledged by the Supreme Court in *Piper Aircraft*, this situation supports dismissal:

> It is true [that if defendants below] were found liable after a trial in the United States, they could institute an action for indemnity or contribution against these parties in Scotland. It would be far more convenient, however, to resolve all claims in one trial. . . . Forcing petitioners to rely on actions for indemnity or contributions would be "burdensome" but not "unfair."  Finding that trial in the plaintiff's chosen forum would be burdensome, however, is sufficient to support dismissal on grounds of *forum non conveniens*.

454 U.S. at 267-68 (citations omitted).  Furthermore, litigating this Case in Brazil will give the Plaintiffs and other parties affected by the crash better access to the litigation proceedings at lower costs.  *See Da Rocha*, 451 F. Supp. 2d at 1324; *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 500 (S.D.N.Y. 2007).

Having carefully considered the arguments of the parties, for the reasons expressed above, the Court finds that the private interest factors strongly favor dismissal of these Cases to Brazil.  To retain jurisdiction here would make access to sources of proof more difficult and expensive and would potentially deprive Manufacturing Defendants of relevant liability and damages evidence and witnesses.  Trying the Cases in Brazil, however, would afford all parties greater and cheaper access to evidence and witnesses as well as allow all potentially liable parties to be joined in one action.

I turn now to the public interest factors.  The factors the Court must consider are:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an

unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509

(1947)).  The Court agrees with Manufacturing Defendants' that the burdens of trying these

Cases here would be great.  One need only look at the docket to get a representation of the

administrative burdens these Cases have already presented: first, there are three "Tazoe" actions

-- 07-21941 (the lead case), 08-23434 (an action consolidating all Plaintiffs from the individual

cases in a suit solely against Airbus S.A.S., and the only action in which Airbus S.A.S. was

actually served), and 08-61391 (which was removed from state court, where only Airbus S.A.S.

is a named Defendant, and where no response to the FNC motion was ever filed) -- second, the

parties and the Court are well aware of the multiple disputes and hearings held regarding

discovery issues.  Additionally, there would likely be further burdens created by the Court's lack

of compulsory process power over certain witnesses and documents, and the subsequent use of

letters rogatory or other slow and complicated methods to procure evidence that would

otherwise be more easily obtained by a Brazilian court.  I also agree with Manufacturing

Defendants that Plaintiffs' argument that there will be only one liability trial and then the parties

will settle damages is mere speculation.  *See Esheva*, 499 F. Supp. 2d at 500 ("[plaintiffs

statement that only a few exemplary damages cases will have to be tried] is an acknowledgment

of the enormity of the burden that litigation in New York imposes . . . .  The prediction about

how many trials will be necessary is in any event nothing more than a guess.").

Next, I reject Plaintiffs' argument that the United States and United States' courts have

an interest in retaining jurisdiction in order to deter negligent conduct by U.S. Defendants.  The

Supreme Court has rejected this line of argument.  *See Piper Aircraft*, 454 U.S. at 260-61

("[T]he incremental deterrence that would be gained if this trial were held in an American court

is likely to be insignificant. The American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here.").  More importantly, and more obviously, Brazil has the superior interest in these Cases.  *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1104 (11th Cir. 2004) ("[I]t is clear that a sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil.").  The accident was the worst in Brazilian aviation history and killed nearly 200 Brazilian citizens or residents.  Two criminal investigations were undertaken in Brazil, resulting in several indictments.  Further, the accident was the subject of two parliamentary investigations and is still under investigation by CENIPA.  In addition, although the Court has not yet had reason to perform a conflict of law analysis, it is inevitable that one would be required and that it would be complex, involving "decid[ing] what Brazilian law is and compar[ing] it to United States law to determine whether a conflict exists and, if it does, [applying] applicable Florida choice of law rules, including with respect to tort liability, the most significant relationship test."  *Da Rocha*, 451 F. Supp. 2d at 1325-26.  With Brazilian Plaintiffs who were injured in Brazil as the result of the crash of a Brazilian domestic flight, it seems likely that Brazilian law would apply.  Lastly, burdening local jurors to serve for lengthy trials that have little or no connection to this forum also weighs in favor of dismissal.

Just as with the private interest factors, the public interest factors weigh heavily in favor of dismissal on *forum non conveniens* grounds.  The burden here, to both the Court and jurors, would be great, and yet the United States and Florida have only a tangential connection to the Cases compared to Brazil's clearly stronger interest.

**B.  Roberto Tazoe**

The parties appear to agree, and the record supports, that Mr. Tazoe is the sole United States citizen in these Cases.  After thorough consideration of the parties' arguments, I find that the same reasons for dismissal of the seventy-six foreign Plaintiffs compel dismissal of Tazoe, despite the greater deference accorded his choice of forum and the Eleventh Circuit's heightened requirement for dismissal.

Tazoe is entitled to "somewhat more deference" than the foreign Plaintiffs.  *Piper Aircraft*, 454 U.S. at 256 n.23.  However, the Supreme Court stated that "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."  *Id.*  The Eleventh Circuit requires that the District Court find "positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country."  *SME Racks, Inc.*, 382 F.3d at 1101 (citations and internal quotation marks omitted).

The Court finds that positive evidence of unusually extreme circumstances exists and that material injustice would occur should Manufacturing Defendants be required to litigate the Tazoe's claims in this forum.  Specifically, Manufacturing Defendants' inability to compel third-party witnesses or the production of documents from those witnesses, and the inability to implead potentially liable third-parties, is both unusually extreme and materially unjust.  *See Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1284 n.4 (11th Cir. 2001) (per curiam) (noting that defendant would likely be prejudiced by having to defend in the United States while other potentially liable parties were sued only in a foreign forum).  In combination with the previously addressed private and public interest factors which also support dismissal, this far

outweighs the heightened deference applied to Mr. Tazoe.[4]

### C. Merits Discovery Does Not Alter the Analysis

Plaintiffs strenuously urge the Court to deny dismissal due to the extent of merits discovery that has taken place, and Manufacturing Defendants' insistence and involvement in it. This position is without support. Plaintiffs argue that Manufacturing Defendants will be gaming the system by engaging in substantial merits discovery they would not be entitled to in Brazil, and then, according to Plaintiffs, using any information to gain a further advantage in seeking discovery from a Brazilian court. Plaintiffs do not explain, however, why they would not be gaining the same advantage, if such an advantage actually exists. Moreover, Plaintiffs do not argue that the *forum non conveniens* motion was untimely. And, at least in part, the extent of merits discovery is Plaintiffs' own doing. When the *forum non conveniens* motion was filed almost no discovery of any sort had been conducted. Instead of responding to the motion, Plaintiffs filed a motion for extension of time to respond. Although this motion dealt mainly with the need for discovery as it pertained to *forum non conveniens* issues, Plaintiffs requested an extension of time to respond until the close of all discovery, which at that time was not set to occur for another six months. Although Manufacturing Defendants intimated that they might file a motion to stay merits discovery, no party actually requested a stay of discovery pending a ruling on the *forum non conveniens* motion and, in fact, Plaintiffs opposed phased discovery in which the first phase of discovery would have been directed toward *forum non conveniens* matters. Lastly, the cases cited by Plaintiffs to support their arguments are non-binding, and in any event, inapposite. *See Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 614-15 (3d

---

[4]The Court recognizes that some damages evidence related to Mr. Tazoe's claims may be in the United States. This, however, does little to tip the balance away from dismissal.

Cir. 1991) (finding dismissal inappropriate where there had been extensive merits discovery and the balance of the private and public interest factors was close, but providing that the "district court may re-enter its order dismissing on forum non conveniens grounds if Du Pont, within 30 days of the remand, makes a further concession which eliminates liability as a relevant issue"); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (reversing dismissal for *forum non conveniens* where the district court improperly focused on certain factors and failed to consider that at the time of dismissal the case was ready for trial and that all documents necessary for trial were located within the district); *Zelinski v. Columbia 300, Inc,*. 335 F.3d 633, 643 (7th Cir. 2003) (upholding the denial of a *forum non conveniens* motion where the case was one month away from trial when the motion was filed, finding further that the fact that the case was able to be tried to conclusion supported that the forum was at least "workable" and stating that "at this point the public interest certainly would not be well-served by deciding to jettison the untold hours of work put into this case by [the chief judge] and his staff, [the magistrate judge] and his staff, the clerk's office . . . , the . . . jurors, and everyone else who got this case through trial").  Accordingly, having considered the arguments presented, taking into account the merits discovery that has been undertaken, I find that discovery here does not significantly alter the balance and that dismissal on *forum non conveniens* grounds is still warranted.

### D.  Reinstatement of Suit

The Court finds that Plaintiffs can reinstate their suit in Brazil "without undue inconvenience or prejudice."  *Leon*, 251 F.2d at 1310-11.  Manufacturing Defendants have stipulated that, for actions re-filed in Brazil within 120 days of dismissal, they will consent to service of process and Brazilian civil court jurisdiction, toll any applicable statute of limitations

in Brazil, make relevant witnesses and documents under their respective possession, custody and control available, and will respect any final, post-appeal judgment.  The Court, therefore, dismisses these actions subject to Manufacturing Defendants' representations.

## III.  CONCLUSION

For the reasons set forth above, it is hereby **ORDERED and ADJUDGED** that Manufacturing Defendants' Joint Motion to Dismiss on the Grounds of *Forum Non Conveniens* [DE 92] is **GRANTED**.  This dismissal is conditioned upon Manufacturing Defendants' representations.  It is **further ORDERED** that this Order and Dismissal applies to the lead case, *Tazoe*, 07-21941 and all associated cases, including the *Camargo* action, 07-61611, as well as the *Tazoe* action in which all Plaintiffs are consolidated, 08-23434, and the *Tazoe* action filed where only Mr. Tazoe and Airbus S.A.S. are parties and where no response to the *forum non conveniens* motion was ever filed, 08-61391.  All pending motions are **DENIED** *as moot*.  The Clerk is instructed to **CLOSE** this case.

**DONE** and **ORDERED** in Chambers at Miami, Florida, this 21st day of August 2009.



_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Chris M. McAliley*
*Counsel of Record*